IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| T. SHARNAI THOMPSON, <br> MARK DYER, and TAMMY DYER, <br><br> Plaintiffs, <br><br> v. <br><br> DIAMOND STATE INSURANCE CO., <br> NATIONAL EQUINE ADJUSTING, <br> INC., and JACKIE C. STARNES, <br> d/b/a STARNES INSURANCE AGENCY, <br><br> Defendants. | § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § | CASE NO. 4:06cv154 |

**REPORT AND RECOMMENDATION OF UNITED STATES
MAGISTRATE JUDGE GRANTING DEFENDANTS'
MOTIONS FOR SUMMARY JUDGMENT**

Pending before the Court are Motions for Summary Judgment filed by Defendants Diamond State Insurance Co. and National Equine Adjusting, Inc. (Dkt. 24 and Dkt. 32). Having considered the motions, Plaintiffs' responses, and the summary judgment evidence, the Court is of the opinion that they should be granted.

**Background**

This is a removal case. At the heart of the dispute is a lame horse. Plaintiffs Sharnai Thompson, Mark Dyer and Tammy Dyer ("Plaintiffs") sued one or more of the defendants on various theories including unfair settlement practices, breach of good faith and fair dealing, failure to comply with the prompt pay statute, DTPA, breach of contract, and fraud. According to Plaintiffs, they purchased Potentially Yours a/k/a "Big" ("the horse") and secured an insurance policy with Diamond State on the horse. Plaintiffs continued with renewals of the same policy until May 21,

2005. Each policy on the horse included loss of use coverage.

On or about May 21, 2004, Plaintiffs purchased a renewal insurance policy issued by Diamond State, numbered AEM0123693, naming Plaintiffs as the persons insured and insuring the horse against loss of use, among other things, for a period beginning on May 21, 2004, and ending on May 21, 2005. Under the terms of the policy, the coverage afforded Plaintiffs for loss of use was subject to monetary limits of fifty percent (50%) of the total policy limit of $200,000.00, or $100,000.00.

The Equine Mortality Policy provides in part that at the commencement period of the policy period the insured animal is in sound health and free from any lameness, injury or physical disability whatsoever and that all such current or *prior* conditions have been disclosed to the insurer (emphasis added). *See* Dkt. 32 at Exhibit 1, ¶III(1). In addition, the policy's "Loss of Use Endorsement Plan A" provides:

> It is a condition precedent to any liability of the Company that the insured (Plaintiffs) shall comply with the following conditions, and any failure by the Insured, his servants, or agents, so to do shall render the Insured's claim null and void and release the Company from liability in connection therewith
> .
> 1.   The condition giving rise to a claim may be not a result of an injury, illness, or disease which existed prior to the effective date of this coverage.

*See* Dkt. 32 at Exhibit 1, p.12.

Plaintiffs allege a panoply of actions against Diamond. Plaintiffs contend that Big suffered a career-ending leg injury during the policy period and submitted notice of such claim which has never been paid. Plaintiffs gave notice of the injury by phone on December 9, 2004. On January 1, 2005, Plaintiffs' vet notified the adjusting company that the horse had sustained a left hind suspensory condition in August 2003. The vet also stated that the horse had undergone surgical

treatment for the condition. A third vet reported that Big was totally and permanently unfit for use as an all-around horse because of neck and lower suspensory disease of the left rear ankle.

Plaintiffs argue that the 2004 condition is not the same as the 2003 condition reflected in the medical records. Defendants argue that the 2004 injury is a pre-existing condition therefore no coverage should attach. Further, Diamond argues that the horse continues to be shown, to which the Plaintiffs respond it is not ridden as an all-around horse. Plaintiffs claim this narrow use was the purpose of the insurance policy. In response, Diamond states that Big was generally insured as a show horse, and, because Plaintiffs continue to show the horse, there is no loss of use issue.

In support of their position, Plaintiffs have submitted the affidavit of Dr. Easter who states that the 2003 injury was a high suspensory injury to Big's left hind hock region.[1] He says the injury had completely healed by January 2004. Dr. Easter states that, in November 2004, Big developed a left rear lameness which he diagnosed as an ossifying tendonpathy of the left rear tendon of the ankle. In a report to the insurance company, Easter also diagnoses lower hock DJD (degenerative joint disease). Easter states that the injury *was not new* at the time he saw the horse. He says that the injury has rendered Big unfit for use as an AQHA all-around horse.

Dr. Donnell's records for 2003 and early 2004 mandated an affirmative response by the Plaintiffs to the questions of prior lameness, nerve blocks and ultrasound. Plaintiffs offer no explanation as to this obvious and glaring omission. Rather, Plaintiffs argue that the career ending injury is different from that sustained in 2003.

---

[1] A hock is defined as the tarsal joint of the hind leg of a digitigrade quadruped, such as a horse, corresponding to the human ankle but bending in the opposite direction. The American Heritage® Dictionary of the English Language, Fourth Edition Copyright © 2007, 2000 by Houghton Mifflin Company.

This is not supported by the records before the Court. A statement by Dr. Donnell submitted to national Equine in January 2005 notes the injury occurred in August 2003. In those records, prognosis for soundness is guarded. He also notes that Big has undergone previous surgical procedures. On November 2, 2004, Dr. Easter examined the horse and treated Big by administering nerve blocks to various areas including the left hind. Dr. Easter's opinion as to when the condition began is unclear.

Contrary to Plaintiffs' claims that Big is no longer fit to be a show horse, Defendants have submitted evidence that Big has continued to be shown in one or more shows in some form or fashion over the last two years. Regardless of whether Plaintiffs have lost use of the horse, however, Defendants suggest that there can be no coverage because Big's disabling injury is actually a pre-existing condition not disclosed by the Plaintiffs. Of particular significance are certain exhibits attached to one or more of the motions filed by Defendants in this case.

Records from the La Mesa Equine *Lameness* Center (the emphasis is provided by the Court) demonstrate that a few months before the application was submitted, the horse had ultra sound, was treated for lameness and received a nerve block  According to the medical notes, the horse was treated for a left hind high suspensory condition as well as a left hock condition prior to the inception of the policy. None of these records or conditions were disclosed to the insurance company as the policy required. *See* Dkt. 32 at Exhibit 8.

Additionally, Plaintiffs' policy was a renewal policy and had to be renewed each year. Part of the requirement for renewal was an application submitted by the insured. The application was submitted on May 15, 2004. Question 3 asks whether the horse has any *past* or present conformation problems, defects or ailments, illness or disease, *lameness,* injury or physical disability including but

not limited to laminitis/founder, OCD, neurological disorders, navicular disease, and/or degenerative joint disease. The answer is "no." Question 5 asks whether the horse has been *nerved* or received any surgical treatment for lameness. The answer is "no." Question 7 asks whether the horse has undergone any diagnostic ultrasound with the last 36 months. That question is answered "yes" with the explanation that Big stepped on a rock. *See* Dkt. 11 at p. 26.

In its motion for summary judgment, Defendant Diamond contends it is not liable under the policy because Plaintiffs failed to disclose Big's pre-existing conditions, which was a condition precedent to recovery under the contract. Plaintiffs claim that they are entitled to coverage since any lameness was healed at the time of the renewal policy and the actual disabling condition is different from that for which Big was treated in 2003.

## Standard

Summary judgment is appropriate when, viewing the evidence and all justifiable inferences in the light most favorable to the non-moving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Hunt v. Cromartie*, 526 U.S. 541, 549, 119 S. Ct. 1545, 143 L.Ed.2d 7 31 (1999). The appropriate inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986).

## Analysis

Although much attention and argument is given to the loss of use of Big, the real issue before the Court and only scantily addressed by the parties is the effect of the condition precedent that all prior conditions be adequately disclosed. Conditions precedent are those acts or events that must

occur before a contract arises or before performance under an existing contract is required. *Texas Dept. of Hous. & Community Affairs v. Verex Assurance, Inc.*, 68 F.3d 922, 928 (5th Cir. 1995); *see also Hohenberg Bros. Co. v. George E. Gibbons & Co.*, 537 S.W.2d 1, 3 (Tex. 1976) (holding that condition precedent may relate either to the formation of a contract or liability under the contract). The insurance policy at issue here provides that it is a condition precedent to any liability that at the commencement of the policy period that all current or prior conditions (including lameness) have been disclosed to the company. It is clear from the uncontroverted summary judgment evidence that Plaintiffs failed to comply with the condition precedent.

A party seeking to recover under a contract bears the burden of proving that all conditions precedent have been satisfied. *Associated Indem. Corp. v. CAT Contracting, Inc.*, 964 S.W.2d 276, 283 (Tex. 1998) (citing *Trevino v. Allstate Ins. Co.*, 651 S.W.2d 8, 11 (Tex. App.- Dallas 1983, writ ref'd n.r.e.)). Accordingly, Plaintiffs have pled that all conditions precedent to Diamond's obligation to pay for losses under the policy have been performed or did occur. *See* Plaintiffs' First Amended Original Complaint at ¶9 (Dkt. 21). If a plaintiff so alleges, then the defendant must deny "specifically and with particularity any conditions that were not performed." FED. R. CIV. P. 9(c); *Walton v. Nalco Chemical Co.*, 272 F.3d 13, 21 (1st Cir. 2001). Texas law is no different on this issue. To require the pleading party to prove an alleged condition precedent, the opposing party must specify in its denial the conditions precedent that allegedly have not been satisfied; it is not sufficient to simply deny that all conditions precedent have been satisfied, even if the word "specifically" is included in the denial. *See* TEX. R. CIV. P. 54; *Wade & Sons, Inc. v. American Standard, Inc.*, 127 S.W.3d 814, 825-26 (Tex. App.- San Antonio 2003, pet. denied).

The Court finds that the issue of condition precedent as to liability has been sufficiently raised in the motions and briefs. The Court also cautions, however, that Counsel for Diamond and National Equine have failed to follow the procedures contemplated by the Rules of Civil Procedure in raising the issue. As kind as the Court can state it, a first year law student could have done a better job in this case.

Neither defendant has ever filed an answer in this Court. Therefore, there is no answer on file specifically denying the conditions precedent that were not performed. It does appear that some sort of an answer was filed in state court prior to removal, but the answers never made their way to this Court. And it was not until four months after the deadline for amending pleadings had passed that Diamond sought leave to file an answer. The Court denied this motion because Diamond did not identify the information necessitating an amendment so far past the deadline and so close to trial.

Notwithstanding the inexplicable ineptitude on the part of Diamond's counsel in failing to file a timely answer to Plaintiffs' Amended Complaint, Plaintiffs never pointed out Defendants' obvious pleading deficiency. And, although the level of legal analysis is superficial to say the least, Defendant Diamond has sufficiently raised the issue of failure to fulfill conditions precedent as a grounds for summary judgment. *See* Dkt. 32, pp. 3-4, 6, 8; Dkt. 38, p. 5; *see also* Dkt. 32 at Exhibits 5 and 6 (letters to Plaintiffs from adjusting company regarding failure to satisfy conditions precedent of policy). There is some authority indicating that "[t]he specific denial of performance of conditions precedent may be raised by motion as well as by answer." *Associated Mech. Contractors, Inc. v. Martin K. Eby Constr. Co., Inc.*, 271 F.3d 1309, 1317 (11th Cir. 2001) (citing *E.E.O.C. v. Klingler Elec. Corp.,* 636 F.2d 104, 107 (5th Cir. 1981); *see also Stearns v. Consol. Mgmt., Inc.*, 747 F.2d 1105, 1112 (7th Cir.1984) ("A defendant may raise the issue of non-performance of a condition

7

precedent prior to trial by way of a motion for summary judgment"); *Heights Driving Sch., Inc. v. Top Driver, Inc.*, 51 Fed. Appx. 932, 940 (6th Cir. 2002) (citing 2 MOORE'S FEDERAL PRACTICE § 9.04 [3] (3d ed. 2000) ("Denial of performance or occurrence of a condition precedent can also be made in a motion for summary judgment")). Moreover, despite Plaintiffs' failure to point out the deficiency, the matter has now been litigated without objection and can now be tried by consent. *See Trinity Carton Co., Inc. v. Falstaff Brewing Corp.*, 767 F.2d 184, 192 (5th Cir. 1985).

The Court also now notes that Diamond's proposed amended answer included a section, characterized as an affirmative defense, specifically denying the occurrence of the condition precedent. Although a condition precedent is technically not an affirmative defense, *see Mellon Bank v. Aetna Bus. Credit, Inc.*, 619 F.2d 1001, 1008, n.6 (3rd Cir. 1980), courts in this circuit have recognized challenges to condition precedent made through affirmative defenses. *See Fuller v. State Farm Mut. Auto. Ins. Co.,* 971 F. Supp. 1098, 1100 (N.D. Tex. 1997) ("To succeed with an affirmative defense of breach of conditions precedent, a defendant must establish (1) that the contract creates a condition precedent, and (2) that the condition precedent was not performed.") (citing *Texas Dept. of Hous. & Cmty. Affairs v. Verex Assurance, Inc.*, 68 F.3d 922, 928 (5th Cir.1995)).

Defendant Diamond has filed a Motion for Reconsideration of this Court's denial of its motion for leave to file an amended answer (Dkt. 84). In light of its summary judgment analysis, the Court grants in part and denies in part that motion because the Court finds that the issue of Plaintiffs' failure to satisfy conditions precedent could either be tried by consent in that Plaintiffs raised no objection or that the issue was sufficiently raised in the pleadings by Diamond. While Diamond is granted leave to amend its answer to conform with the requirement that it specifically deny the satisfaction of conditions precedent, Diamond is not granted leave to file its counter claim.

With the issue of satisfaction of conditions precedent properly before it, this Court finds that Diamond is not liable on the contract because Plaintiffs did not disclose that the horse was lame and had surgical treatment in the months prior to the renewal policy. Plaintiffs appear to imply that they were not aware of this prior condition since Big was cared for by his trainers. The Court finds this explanation implausible and not relevant to the failure to disclose. As stated, a condition precedent is essential to contract formation and or liability. Diamond had every right to declare the policy null and void. Because the facts were not disclosed, Diamond has no liability under the policy.

Because Plaintiffs failed to comply with a condition precedent of the policy, the Court grants Defendant Diamond's motion for summary judgment. That having been said, Plaintiffs' other causes of action also fail, and both defendants are entitled to summary judgment.

## Conclusion & Recommendation

Based on the foregoing, the Court modifies its order denying Defendant Diamond leave to file an amended answer (Dkt. 68). Defendant Diamond State Insurance Co.'s Motion for Leave to File its First Amended Answer, Affirmative Defenses, and Counterclaims is GRANTED in part and DENIED in part (Dkt. 55). Defendant Diamond is granted leave to file an amended answer containing its defenses and affirmative defenses. Defendant Diamond is not granted leave to file any counterclaims.

In light of this ruling, the Court further recommends that Defendants' Motions for Summary Judgment be GRANTED and that Plaintiffs' case be dismissed with prejudice.

Within ten (10) days after service of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C.A. § 636(b)(1)(C).

Failure to file written objections to the proposed findings and recommendations contained in this report within ten days after service shall bar an aggrieved party from *de novo* review by the district court of the proposed findings and recommendations and from appellate review of factual findings accepted or adopted by the district court except on grounds of plain error or manifest injustice. *Thomas v. Arn*, 474 U.S. 140, 148 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276-77 (5th Cir. 1988).

**SIGNED this 15th day of June, 2007.**

_____
DON D. BUSH
UNITED STATES MAGISTRATE JUDGE